# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

PHILIP M. SEBOLT,         )
                                  )
             Plaintiff,       )
                                  )
          vs.           )      Case No. 2:15-cv-00353-WTL-MPB
                                  )
LEANN  LARIVA Current Warden of F.C.I.  )
 Terre Haute, et al.,           )
                                  )
            Defendants.    )

**Entry Dismissing Amended Complaint and Directing Entry of Final Judgment**

**I. Standard of Review**

Because the plaintiff is a "prisoner" as defined by 28 U.S.C. § 1915(h), this Court has an obligation under 28 U.S.C. § 1915A(b) to screen his 58-page amended complaint. Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the amended complaint if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief.  In determining whether the amended complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).  To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Pro se complaints such as that filed by the plaintiff are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  *Obriecht v. Raemisch*, 517 F.3d 489, 491 n.2 (7th Cir. 2008). In screening the amended

complaint, this Court has the benefit of considering the parties' fully briefed motion to dismiss the original complaint which was superseded by the filing of the amended complaint. As well as, the parties' briefing on the futility of the amended complaint. See dkts. 30 and 33.

## II. Factual Background and Allegations

In screening this action, this Court has taken judicial notice of the plaintiff's criminal history and Bureau of Prison ("BOP") Program Statement 4500.11. See Fed. R. Evid. 201; *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996) (federal courts can take judicial notice of the decisions of federal and non-federal courts). BOP Program Statement 4500.11 (Trust Fund/Deposit Fund Manual) at Chapter 14, (available at: https://www.bop.gov/PublicInfo/execute/policysearch#, last visited May 22, 2017) (relevant portion attached to this Entry) (hereinafter referred to as "PS 4500.11") is properly considered because it is authentic and central to the plaintiff's claim.[1] *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (allowing consideration of agreements not attached to the pleadings in considering motion to dismiss and citing cases).

### *Sebolt's Criminal History*

In 2004, plaintiff Philip Sebolt was convicted in the Northern District of Illinois for using his computer to commit various federal crimes involving child pornography. *United States v. Sebolt*, 460 F.3d 910 (7th Cir. 2006). Specifically, Sebolt used his computer server to share and solicit child pornography, namely pornography involving very young and infant children. *Id.* at 913-14. Sebolt was sentenced to 360 months' imprisonment. *Id.* at 914.

---

[1] As of April 9, 2015, PS 4500.11 superseded the TRULINCS policy previously contained in PS 5265.13. *Himko v. English*, No. 5:16CV35/MMP/EMT, 2016 WL 7645584, at *3 (N.D. Fla. Dec. 5, 2016). This action was filed on November 5, 2015.

In March of 2012, while incarcerated at the Federal Correctional Center – Petersburg, Virginia, Sebolt was charged with advertising child pornography because he created a "notice or advertisement" seeking to purchase child pornography, in violation of 18 U.S.C. § 2251(d). *United States v. Sebolt*, 554 Fed. Appx. 200 (4th Cir. 2014). The evidence introduced at Sebolt's bench trial showed that he had for several years engaged in an elaborate scheme to obtain nude photographs of children. He first obtained books with photographic illustrations of children from around the world. He then contacted women in Sri Lanka and Ethiopia using a "Christmas card" with a secret compartment through which he would pay them money to send him explicit photos of young women. Sebolt successfully obtained a card containing a photograph of a nude female toddler in a sexually suggestive pose hidden inside a secret compartment. *Id*. at 202-03. Sebolt used these photos to create a handwritten flyer seeking, "in graphic terms, pictures of nude, prepubescent children posing in various positions." *Id.* at 202. The flyer offered various sums of money for the pictures depending on the pose or sexual act depicted, and also included photographs of nude children. *Id.* Based on this conviction, Sebolt has now been sentenced to life in prison. *United States v. Sebolt*, 598 Fed. Appx. 159 (7th Cir. 2015)(upholding life sentence following prior remand for resentencing).

### *Communication Management Unit*

Sebolt was transferred to the Federal Correctional Institution in Terre Haute, Indiana, ("FCI – Terre Haute") in April 2013. (Am. Compl. dkt 35 at ¶ 31.) Upon his arrival at FCI-Terre Haute, Sebolt was assigned to the Communications Management Unit ("CMU") which is a housing unit environment that enables staff to more effectively monitor communication between inmates in the CMU and persons in the community. The volume, frequency, and methods of CMU inmate contact

with persons in the community may be limited as necessary to protect the public and ensure the orderly operation of the institution. See Am. Compl. at ¶¶ 77-81 (describing CMU).

Despite their placement, inmates placed in a CMU have a variety of means of communication available. CMU placement has no effect on the regulations, policy, or general practice or procedures regarding the receipt and distribution of incoming publications. Am. Compl. at ¶ 132. Inmates on the CMU unit are able to send and receive general written correspondence (although there is often a delay while the materials are reviewed by staff for security reasons). *Id.* at ¶¶ 141-142. Attorney mail is considered privileged and may be sent and received by inmates in the CMU. *Id* at ¶ 143. Additionally, inmates on the CMU unit have access to the inmate telephone system to make two 15-minute monitored phone calls once a week. *Id.* at ¶ 149 (these privileges may be further restricted by the Warden). Unmonitored (privileged) attorney phone calls are allowed providing that confidential correspondence, visiting, or monitored telephone use is not adequate. *Id.* at ¶ 151. Finally, social visits are permitted. *Id.* at ¶ 155.

### *TRULINCS System*

The Trust Fund Limited Inmate Computer System ("TRULINCS") is a computer system through which inmates can send and receive electronic mail. *See* PS 4500.11; *see also* Am. Compl. ¶¶ 90-127 (describing system). TRULINCS allows inmates to email with family and friends who are listed on the inmate's electronic contact list. TRULINCS email access is subject to individual inmate approval, and each proposed contact must give their permission to communicate with the inmate. BOP officials regulate inmates' TRULINCS usage, and inmates are not allowed to access the internet. PS 4500.11 states that the use of TRULINCS is a privilege and that the BOP has absolute discretion in determining whether to limit or deny the use of TRULINCS by an inmate.

Title 28, United States Code § 4042, gives the BOP the authority to implement and operate TRULINCS. The warden may limit or deny access to individual inmates at any time or as part of classification procedures. An inmate's exclusion from the TRULINCS system must be based on the inmate's individual history of behavior and not on a general categorization. (*See* PS 4500.11 at 14.9.) As for sex offenders, the BOP states that an inmate "whose offense, conduct, or other personal history indicates a propensity to offend through the use of email or jeopardizes the safety, security, orderly operation of the correctional facility, or the protection of the public or staff, should be seriously considered for restriction." (*Id*. at 14.9(a)(1).)

Prior to Sebolt's transfer to FCI-Terre Haute he was incarcerated at the Federal Correctional Institution in Hopewell, Virginia. The TRULINCS system was activated in October 2010. Sebolt was initially denied participation in TRULINCS. On February 15, 2011, however, Sebolt achieved a favorable outcome during the administrative remedy process and was granted access to TRULINCS. Unfortunately for Sebolt, two days later he was found guilty of an incident report and sanctioned with the loss of Electronic Messaging privileges for one year. Am. Compl. at ¶¶ 82-89. On January 25, 2012, just weeks prior to regaining his access to Electronic Messaging, Sebolt was found guilty of another incident report and was sanctioned to an additional loss of Electronic Messaging privileges for one year.

Sebolt alleges that consistent with BOP Program Statements he was assessed by Melissa J. Bayless for TRULINCS program participation after his arrive at FCI-Terre Haute. Following this review, Ms. Bayless signed a memo dated April 9, 2013, stating that based upon Sebolt's "personal history, prior offense conduct and convictions . . . it has been deemed that [his] history of behavior could jeopardize legitimate penological interests." Am. Compl. at ¶ 22. Sebolt initiated the

Administrative Remedy process arguing that he should be permitted to utilize TRULINCS. Sebolt's appeals were ineffective and he remains restricted from accessing TRULINCS.[2]

Despite the fact that Sebolt has been prohibited from accessing TRULINCS while at FCI-Terre Haute, he managed to access the system during a "technical glitch" in October 2014. Am. Compl. ¶¶ 71-76.

### III. Legal Claims

Plaintiff Philip M. Sebolt has sued the BOP; Melissa J. Bayless, former unit manager of D-Unit (Communications Management Unit) at FCI-Terre Haute; John C. Oliver, former Warden of FCI-Terre Haute; Harley G. Lappin, Former Director of the BOP; and Charles E. Samuels, Jr., Former Director of BOP. The individual defendants are sued in their individual and official capacities. Sebolt filed this civil action seeking a declaratory judgment, injunctive relief and money damages. He purports to bring his claims under the Administrative Procedure Act, 5 U.S.C. § 702, ("APA").

***Constitutional Claims***

In the amended complaint, Sebolt alleges that the denial of TRULINCS access resulted in four violations of the law for which he is entitled to relief: Counts 1 and 2 allege the denial of Sebolt's First Amendment right to Free Speech; Counts 3 and 4 allege Sebolt was denied his Sixth Amendment right to counsel. He is mistaken. There is no First, Fifth or Sixth Amendment right to e-mail in prison nor is there any constitutional right to receive and read publications, consult with legal counsel or obtain legal advice via email. Am. Compl. ¶¶ at 25-48 and ¶¶ 55-70.

Other Courts that have considered inmates' claims that their constitutional rights were violated by the denial of use of TRULINCS have been rejected summarily. *See Stratton v. Speanek*,

---

[2] Because Sebolt cannot access TRULINCS, he also cannot access TRUGRAM which is a service that allows inmates to transfer funds to individuals in the community.

No. 14-CV-120-HRW, 2014 WL 6705394, at *3 (E.D. Ky. Nov. 26, 2014) (citing cases and finding that use of the TRULINCS system is an institutional privilege and not a constitutionally protected right); *Edington v. Warden of FCI Elkton*, No. 4:14CV2397, 2015 WL 1843240, at *4 (N.D. Ohio Apr. 22, 2015) (dismissing *Bivens* claim based on denial of access to TRULINCS at screening).

The defendant argues that the ability of prisoners to communicate with outsiders through the United States mail enjoys substantial protection, *see Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000), but that prisoners' use of other means of communication is not guaranteed. Dkt. 21 at p. 7. The defendant argues and this Court's independent research confirms that there are no decisions from any federal court holding that an inmate has a constitutional right to access computers or an electronic mail system. *See e.g., Solan v. Zickefoose,* 530 Fed. App'x 109, 112 (3d Cir. 2013) (BOP Program Statement regarding TRULINCS is entirely consistent with 18 U.S.C. § 4042(a)(2), which authorizes the BOP to "provide for the safekeeping, care, and subsistence" of Federal prisoners); *Lineberry v. Federal Bureau of Prisons*, 923 F.Supp.2d 284, 293 (D.D.C. Feb. 15, 2013) (citing cases and holding that prior iteration of BOP TRULINCS policy, PS 4500.11, is constitutional); *Hoffman v. Fed. Bureau of Prisons*, 2013 WL 5529612, at *4 (S.D. Ill. Oct. 7, 2013) (the BOP's Program Statement regarding email access "easily passes the reasonableness inquiry [and] has an obvious connection to the interests of protecting the public and maintaining prison security."); *Gatch v. Walton*, 2013 WL 6405831, at *2 (S.D. Ill. Dec. 6, 2013) (Program Statement "[has] an obvious connection to the interests of protecting the public and maintaining prison security"); *Grayson v. Federal Bureau of Prisons*, 2012 WL 380426, * 3 (N.D. W.Va. Feb. 6, 2012) ("[P]risoners have no First Amendment constitutional right to access email."); *Bristow v. Amber*, 2012 WL 1963577, at *2–3 (S.D. Ohio May 31, 2012) (prisoners do

not have a First Amendment right to access email); *Holloway v. Magness*, 2011 WL 204891, at \*7 (E.D. Ark. Jan. 21, 2011) ("[T]he First Amendment [does not require] that the government provide telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances; the First Amendment is a limit on the exercise of governmental power, not a source of positive obligation."); *Rueb v. Zavaras*, 2011 WL 839320, \* 6 (D. Colo. Mar. 7, 2011) ("Inmates do not have a First Amendment right to have access to email."); *Dunlea v. Federal Bureau of Prisons*, No. 3: 10–CV–214, 2010 WL 1727838 (D. Conn. April 26, 2010), *abrogated on other grounds by Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010) ("Because the use of TRULINCS was a privilege, the BOP and Warden Zickefoose had complete discretion in determining whether Dunlea was entitled to use TRULINCS at all or on a limited basis.").

In response, Sebolt argues that his case is unique and distinguishable from the cases listed above because his claim is focused on the right to receive and read publications which are only available electronically. Dkt 33, p. 4-8. But the Supreme Court has held that a prison policy generally limiting inmates' access to newspapers and magazines does not violate the First Amendment where there is a rational reason for the policy. *Beard v. Banks*, 548 U.S. 521 (2006) (holding that ban on all newspapers, magazines, and personal photographs for inmates housed in long-term segregation unit does not violate First Amendment because it is rationally related to rehabilitation). That is the case here, as the BOP Program Statement regarding its TRULINCS policy, PS 4500.11, is per se constitutional and meets the reasonableness standard set forth in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987).

The BOP Program Statement at issue sets forth a legitimate government interest, authorized by 18 U.S.C. § 4042, in both establishing the TRULINCS system, but rationally limiting its access

from those inmates whose use of it may jeopardize the safety, security, or orderly operation of the correctional facility or the public. PS 4500.11 at 14.2. The policy has been properly applied to Sebolt who was convicted for using his computer server and electronic communication to trade in child pornography and who used it to engage in sex with a minor he met on the internet. *Sebolt*, 460 F.3d at 913-14. Sebolt does not allege that the FCI – Terre Haute decision-makers or Warden violated or misapplied BOP policy when they denied his access to TRULINCS. Indeed, he admits that the BOP relied upon his personal history and upon the conduct of his convictions in denying him access. *See Dunlea v. Federal Bureau of Prisons*, 2010 WL 1727838, *4 (D.Conn. Apr. 26, 2010), *abrogated on other grounds by Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010) (where plaintiff was initially permitted to use TRULINCS but privilege was later revoked, court denied writ of habeas corpus because use of TRULINCS is a privilege and BOP officials had the discretion deny access based on conviction of credit card fraud and bank embezzlement). By the time Sebolt was transferred to FCI – Terre Haute in April 2013, he had proven himself untrustworthy in accessing even the United States mail, which he used to obtain and advertise child pornography. *Sebolt*, 554 Fed. Appx. at 200. The FCI – Terre Haute was well within BOP policy in denying Sebolt access to email.

Sebolt alleges that he wanted to send an electronic message to his attorney after the Fourth Circuit ruled on his criminal appeal and that he wanted to send an electronic message to a paralegal who was helping him with his Section 2255 motion regarding a certificate of appealability, but that he was unable to do so. Sebolt argues that he was "unable to meaningfully communicate with Mark K. Tyndall, his criminal defense attorney in his criminal case in Richmond, Virginia," because telephone contact could not be scheduled, attorney visits were not feasible and mail would

take too long, such that e-mail was the only platform that would have allowed him instantaneous contact. Dkt. 33 at p. 20.

These facts are insufficient to allege a denial of access to courts claim or a denial of counsel claim. As a preliminary matter, the TRULINCS email system was not created and does not provide for confidential, unmonitored communications. PS 4500.11 at 128, 135. Therefore, the TRULINCS system was not created nor intended to be a means for inmates to engage in confidential communications with counsel. In addition, while Sebolt wanted to use email to contact an attorney and paralegal he had other means to communicate, including unmonitored calls to his attorney, mail, and attorney visits even if these traditional means of communication were slower than email. There is no allegation that Sebolt was prejudiced by the lack of email communication in his litigation. Accordingly, the amended complaint fails to state a denial of access to the courts or of counsel claim upon which relief could be granted.

Finally, Sebolt claims that the BOP's policy precluding sex offenders from participating in TRULINCS violates his constitutional rights. Again, he is mistaken. Sebolt was not denied access to TRULINCS because of a blanket policy, instead his eligibility to participate in TRULINCS was assessed individually consistent with PS 4500.11 which states:

> **a. Program/Service Exclusions.** Inmates excluded from participation under this section are notified of the specific reason(s) by a written explanation of the decision, unless possessing such written information would threaten the safety of the inmate or other legitimate penological interest(s). If prohibited from possessing a copy of the written explanation, inmates remain entitled under the Freedom of Information Act (FOIA) to access this information from their central files, and must be provided reasonable opportunities to access and review such documents. At the inmate's request, expense, and preparation of an envelope, staff may photocopy and mail the documents.
>
> An inmate's exclusion from participation must be based on their individual history of behavior that could jeopardize the legitimate penological interests listed above. Inmates must not be excluded from participation based on general categorizations of previous conduct.

**(1) Sex Offenders.** Inmates whose offense, conduct, or other personal history indicates a propensity to offend through the use of email or jeopardizes the safety, security, orderly operation of the correctional facility, or the protection of the public or staff, should be seriously considered for restriction.

As a method of identifying these inmates, staff responsible for local sex offender management should review inmates with SENTRY CMA Walsh Assignments of Certified, With Conviction, and No Conviction, to determine if their participation in the Public Messaging Service poses a realistic threat. TRULINCS automatically applies a temporary restriction on inmates' accounts with the above SENTRY CMA Walsh Assignments. These restrictions may be over-written when deemed appropriate by staff responsible for local sex offender management and approved by the Warden.

Inmates may be permanently restricted from corresponding and/or communicating with individuals who are:

■ Prior child or adult victims of sexual offenses committed by the inmate.
■ Children who are being groomed by the inmate for sexual assault or other predatory behavior involving children and/or the caregivers of those children.
■ Other sexual offenders.
■ Any other contact with the general public deemed inappropriate by staff responsible for local sex offender management due to its association with the inmate's risk to engage in sexually offensive behavior.

PS 4500.11 at p. 131-132. Sebolt was given an individual assessment. Am. Compl. ¶¶ 21-24. The

Complaint and Amended Complaint both set forth the BOP's rationale for limiting Sebolt's access

to TRULINCS, which was based on the nature of his conviction and prior offense history as well

as his disciplinary history. Quite simply PS 4500.11 does not create a "sex offender preclusion

policy." Dkt. 33 at 8.

Accordingly, Sebolt's claims that the denial of access to TRULINCS has violated his

constitutional rights is **dismissed** for failure to state a claim upon which relief can be granted

pursuant to 28 U.S.C. § 1915A.

*Administrative Procedures Act*

Sebolt asserts that "judicial review of final agency action(s) under 5 U.S.C. § 706(2)(B) is appropriate for this claim with respect to Defendant Federal Bureau of Prisons." Dkt. 35 at ¶ 206. Sebolt does not allege any basis to conclude that the BOP violated the APA, nor does he seek relief based on this violation.

The APA provides a cause of action for persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.

The defendant correctly explains:

> Congress delegated to the BOP the duty to manage and regulate all federal penal and correctional institutions. 18 U.S.C. § 4042(a)(1). To that end, the BOP implements Program Statements and other policies, such as Institutional Supplements, to manage the prison system. The Supreme Court has held that BOP Program Statements are internal agency explanations or guidelines and are therefore not subject to the APA's rulemaking requirements. *See Reno v. Koray*, 515 U.S. 50, 61 (1995) (noting BOP Program Statements are not "laws" within the meaning of the statute because they do not constitute regulations promulgated in compliance with the requirements of the Administrative Procedure Act; rather, they are internal agency guidelines that are "akin to ... interpretive rules").

The TRULINCS system was created by the BOP pursuant to the authority granted in 18 U.S.C. § 4042(a)(1). The absence of specific guidelines means that the BOP has broad discretion in fulfilling its responsibilities and implementing § 4042. Thus, other federal courts have held that any APA challenge to the TRULINCS Program Statement as "arbitrary and capricious" is unreviewable by the Court because it falls within the BOP's broad discretionary powers to administer prisons. *Hammonds v. Federal Bureau of Prisons*, 2012 WL 759886 (N.D. Tex. March 7, 2012); *Green v. Maye*, 2012 WL 1982249 (W.D. Tex. June 1, 2012); *see Harrison v. Federal Bureau of Prisons,* 464 F.Supp.2d 552, 558 (E.D. Va. 2006) (holding that inmate plaintiff's challenge to increased cost of telephone calls pursuant to a program statement implemented under § 4042 was precluded by the APA). Even if the Court could review the BOP's decision to deny

Sebolt access to the TRULINCS system, his own allegations and his prior criminal convictions establish that the decision is not arbitrary and capricious.

To the extent that Sebolt brings a claim under the APA, this claim is dismissed for failure to state a claim upon which relief may be granted.

Having failed to allege a plausible claim for relief the amended complaint is dismissed pursuant to 28 U.S.C. § 1915A. Under these circumstances, the plaintiff's motion to stay this action for 90-days, [dkt. 41], is **denied.** Sebolt seeks a stay because he was recently transferred to Administrative Detention for his protection. Due to this move, Sebolt does not have current possession of his legal materials. Because this action is dismissed, no further action is required by Sebolt in this Court. Nor does he need these materials to file a Notice of Appeal.

### IV. Conclusion

For the reasons explained above, the amended complaint is dismissed for failure to state a claim upon which relief may be granted. Given the extended briefing on the claims raised in the amended complaint, any further amendments would be futile. If the plaintiff wants to continue in his quest to establish that prisoners have a First Amendment right to email or that the application of PS 4500.11 violates his constitutional rights, he may do so by appealing this ruling to the Seventh Circuit.[3]

This action is dismissed pursuant to 28 U.S.C. § 1915A. Judgment consistent with this ruling shall now issue.

---

[3] If the plaintiff wishes to file a Notice of Appeal he should file a "Notice of Appeal" which includes the caption of this action as well as the language set forth in Form 1 of the Appendix of Forms to Federal Rules of Appellate Procedure. This language is as follows:

Notice is hereby given that _____ (here name all parties taking the appeal)___, (plaintiffs) (defendants) in the above named case,* hereby appeal to the United States Court of Appeals for the _____ Circuit (from the final judgment) (from an order (describing it)) entered in this action on the _____ day of _____, 20__ .

**IT IS SO ORDERED.**


Date: 5/23/17

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Distribution:

All Electronically Registered Counsel

PHILIP M. SEBOLT
Reg. No. 14682-424
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808